## HALLOWELL et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. December 2, 1918.)

No. 3141.

1. CONSPIRACY ⟨key⟩43(12), 45—PROSECUTION FOR USING MAILS TO DEFRAUD—EVIDENCE.

In a prosecution for conspiracy to use the mails to defraud, letters written by defendants to persons charged to have been defrauded, asking further remittances, *held* admissible in evidence under the charge in the indictment, and as showing intent.

2. CRIMINAL LAW ⟨key⟩824(8)—TRIAL—INSTRUCTIONS.

The failure to give an instruction limiting the purpose for which particular evidence may be considered is not error, where such instruction is not specially requested.

3. CRIMINAL LAW ⟨key⟩423(1)—ACTS OF CONSPIRATORS—EVIDENCE.

In a prosecution for conspiracy to use the mails in furtherance of a scheme to defraud, where a conspiracy between defendants to carry out such scheme is shown, evidence of acts of one defendant in its execution is admissible against the others.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Criminal prosecution by the United States against W. F. Hallowell and W. F. Lick. Judgment of conviction, and defendants bring error. Affirmed.

The plaintiffs in error were convicted under a charge of conspiracy to use the mails in furtherance of a scheme to defraud. The scheme involved a pretended location of claimants upon lands in Oregon represented to be included in what was known as the Oregon & California Railroad land grant, and which were then in litigation in a suit brought by the United States against the railroad company to forfeit the grant. The indictment charged that the defendants conspired to devise a scheme to defraud various named persons, and the public generally, through the use of the United States mails, by inducing them to pay over to the defendants certain sums of money, with the intention of defrauding them "out of all sums of money that such persons would pay over to the defendants. or either of them," and that the scheme contemplated making in substance the following representations:

That in the above-mentioned suit then pending the United States was seeking to compel the railroad company to sell and convey the lands of the grant to persons making application therefor through the defendants, in quantities not to exceed 160 acres to each applicant, and for a price not to exceed $2.50 per acre; that the defendants were the agents of the railroad company, and authorized by it to solicit persons to make applications to purchase lands; that the railroad company, conceding that it could not prevail in the suit, desired to procure a large number of persons to make application to purchase the land, and that it would require all persons making application to purchase to enter into a written option obliging themselves, upon procuring title, to convey the timber on the land to the railroad company; that every applicant would receive title within six months from the date of his application, and would make a large sum of money thereby; that all of the tracts of land for which applications were to be made through the defendants were portions of the land involved in the suit then pending.

The indictment then charged that all the representations were false, and known to the defendants to be false, and were made by them for the purpose of executing the fraudulent scheme; that it was the purpose of the United States in said suit to acquire for itself all of said lands, and it was the purpose of the railroad company to retain title to itself for all of said

lands; that none of the defendants was ever authorized by the railroad company to make any of said representations; that many of the applications so induced were located upon the same tract of land; that many of the applications were made upon lands that never belonged to the railroad company and were not affected by the suit; that many of said tracts had no timber, and many of them were absolutely worthless. The indictment then set forth the commission of certain overt acts, which consisted in the mailing of certain letters through the United States mails.

The plaintiffs in error were convicted as charged, and they bring separate writs of error. They both assign error to the ruling of the court below in admitting certain letters in evidence, written by Hallowell, and signed "Hallowell & Co.," and sent to various persons who had made applications to purchase the lands at the instance of the defendants. The letters were all similar in general purport. The letters showed that demand was made in the name of Hallowell & Co., for payment by certain of the applicants of the sum of $2.50 per acre, the purchase price of the lands. Their admission in evidence was objected to as incompetent, irrelevant, and immaterial, and because entirely outside of the scope of the charge made in the indictment.

Thomas J. Cleeton and James H. McMenamin, of Portland, Or., for plaintiff in error Lick.

Edwin E. Heckbert and Samuel White, of Portland, Or., for plaintiff in error Hallowell.

Bert E. Haney, U. S. Atty., and Robert R. Rankin and Barnett H. Goldstein, Asst. U. S. Attys., all of Portland, Or.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The plaintiffs in error contend that, inasmuch as the indictment charges that it was the purpose of the scheme to induce each of the victims thereof to pay to the defendants named in the indictment the sum of $150 for their services in receiving and presenting to the railroad company the applications to purchase lands, it was error to admit the letters written to certain of the applicants demanding the further sum of $2.50 per acre; the purpose to demand said further sum not having been specified in the indictment, and proof of demand therefor being without the scope of the indictment. From the letters so admitted it appears that Hallowell & Co. informed the applicants that a decision was expected "any day now," that the money was demanded to meet the emergency of being required to pay it to obtain the deeds, and that it would be to the interest of the applicants to arrange to have the money on hand at once, "as in case they call for the money, and we are not ready to put it up, they wouldn't wait a minute."

To the contention of the plaintiffs in error it is to be said, first, that the indictment goes further than to charge that the scheme was only to obtain from each of the applicants the sum of $150 for the services of the defendants. It alleges further, as a portion of the scheme, that the defendants, upon receiving the applications, would thereupon pretend to tender to the said defendant railroad company, on behalf of each of said victims, the sum of $2.50 per acre for said respective tracts of 160 acres each, so by the said victims and various other persons to be applied for. It does not follow, from this language of the indictment, that the tender so contemplated was to be made with the funds of the defendants, and the demand upon the applicants to advance the money

wherewith to make the tender, or to make the payments, was clearly not foreign to the scheme so charged. The letters contain intimations that, if the money therein applied for should not be needed for the purpose indicated, it would be returned to the applicants.

It is clear, also, that the letters were admissible for the statements they contain, aside from inducements to the applicants to advance the $2.50 per acre. Thus one of the letters states that the writers "have been told to file more applications as soon as possible, which we take to mean that they would wish to use up, or in other words get applications for, all of their land," and states further, "There is not a claim we have filed on worth less than $5,000." Another letter says: "We have been reliably informed that, before the 90 days is up, we will be notified to call for our deeds." Another falsely states: "The government suit was only brought with the intention of compelling the R. R. Co. to sell the land according to the terms of the grant." Two other letters state: "We have been advised that it would be advisable for us to be prepared to get our deeds." These statements all tend to prove the criminal conspiracy charged in the indictment, and they were admissible in evidence, notwithstanding the fact that before they were made the defendants had obtained from each of the applicants to whom they were addressed the sum of $150, in accordance with the general scheme.

[2] Again, the letters were admissible to show intent. Allis v. United States, 155 U. S. 117, 119, 15 Sup. Ct. 36, 39 L. Ed. 91; Dillard v. United States, 141 Fed. 303, 72 C. C. A. 451; Gould v. United States, 209 Fed. 730, 739, 126 C. C. A. 454; Moffatt v. United States, 232 Fed. 522, 526, 146 C. C. A. 480; Farmer v. United States, 223 Fed. 903, 911, 139 C. C. A. 341; Linn v. United States, 234 Fed. 543; Shea v. United States, 251 Fed. 440, 442, ‒‒‒ C. C. A. ‒‒‒. The plaintiffs in error admit that such evidence is admissible to establish intent or motive, but contend that it was error to admit it in the present case, for the reason that the court, in admitting it and in instructing the jury, failed to limit the evidence to the question of motive and intent. There was no motion or request, however, that the evidence be thus limited, nor was the court requested so to instruct the jury. The failure to give an instruction limiting the purpose for which particular evidence may be considered is not error, where such instruction is not specially requested. 16 C. J. § 2500; Ball v. United States, 147 Fed. 32, 41, 78 C. C. A. 126; Schultz v. United States, 200 Fed. 234, 118 C. C. A. 420, Moffatt v. United States, 232 Fed. 522, 533, 146 C. C. A. 480.

[3] The plaintiff in error Lick contends that the trial court erred in failing to instruct the jury that they could not consider as against him the letters above referred to, nor the evidence in regard to the money obtained by Hallowell for the alleged purpose of paying the railroad company for the lands. In answer to this it is sufficient to say that no such request for an instruction was made, and that, if such a request had been made, it would not have been error to deny it. None of the evidence is brought here in the bill of exceptions, except that which relates to the letters, and the said payments of money to Hallowell. It is certified in the bill of exceptions that competent evidence was in-

troduced to establish the fact that Hallowell, Lick, and others had entered into the conspiracy charged in the indictment, and that the overt acts charged in the indictment were performed; and although it is certified further that there was absence of evidence that Lick had knowledge of Hallowell's acts in writing the letters or receiving the money therein referred to, there is nothing in the record to show that at the time when these acts were done by Hallowell the conspiracy had been abandoned, or that it was not then being actively prosecuted. The general rule of evidence in such cases was therefore applicable, and it was proper for the jury to consider, as against Lick, the acts and declarations of his co-conspirator, made during the pendency of the conspiracy, and in furtherance of the common design, although he may have had no knowledge of those acts or declarations. Lick might have been entitled to an instruction that such evidence should not be considered against him, unless the jury were satisfied that a conspiracy existed, and that he was a party to it; but that is a question not here involved.

We find no error. The judgment is affirmed.