## KERCHEVAL v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. May 4, 1926.)

No. 7185.

1. **Criminal law** ⊜⇒1178.

Assignments of error which are not argued will be considered abandoned in Circuit Court of Appeals.

2. **Post office** ⊜⇒48(4)—Indictment in prosecution for use of mails in fraudulent scheme to obtain money held sufficient to charge offense (Penal Code, § 215 [Comp. St. § 10385]).

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for use of mails in fraudulent scheme to obtain money, indictment *held* not demurrable, in that it did not state facts sufficient to constitute an offense against the United States, or that allegations did not state scheme to defraud with sufficient certainty to inform defendant of offense with which he was charged.

*Rehearing denied July 26, 1926.

3. **Criminal law** ⊜⇒372(1)—Telegrams, letters, and circulars sent by defendant to persuade people to buy shares held admissible, in prosecution for devising scheme to obtain money by false representations and use of mail therein, as showing fraudulent intent and character of scheme in which defendant was engaged (Penal Code, § 215 [Comp. St. § 10385]).

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for use of mails in fraudulent scheme to obtain money, telegrams, letters, and circulars sent to various people, persuading them to buy shares, *held* admissible as bearing on question of fraudulent intent, and as showing character of scheme in which defendant was engaged.

4. **Criminal law** ⊜⇒531(3).

Confession is voluntary in law only if it was in fact voluntarily made, and it is not sufficient to establish that confession was not induced by promise or threat.

5. **Criminal law** ⊜⇒736(2)—Plea of guilty, later withdrawn, held properly admitted in evidence, under instruction leaving question of whether it was voluntary to jury, and directing jury to disregard it, if induced by promise.

Plea of guilty, which was later withdrawn, *held* properly admitted in evidence under instruction leaving question of whether plea was voluntary, or induced by promise, to jury, and directing jury to disregard plea, if induced by promise.

6. *Criminal law* ⊜⇒419, 420(10), 460—Evidence as to opinion of oil men as to value of certain fields, and whether it was not generally reported that certain well was producing oil held properly excluded as opinion and hearsay (Penal Code, § 215 [Comp. St. § 10385]).

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for using mails in fraudulent scheme to obtain money, evidence of opinion of oil men as to value of certain fields, and as to whether literature sent out overestimated value of land, and whether it was not generally reported that certain well was producing oil, *held* properly excluded as opinion, and purely hearsay testimony.

7. **Criminal law** ⊜⇒419, 420(10).

Refusal to permit witness to testify as to what another person told him *held* proper, as being hearsay.

8. **Criminal law** ⊜⇒371(3)—Transaction occurring more than year after indictment for devising scheme to obtain money by false representations and using mails therein held inadmissible, as so far removed that it would throw no light on question of intention at time of formulation of alleged scheme (Penal Code, § 215 [Comp. St. § 10385]).

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for using mails in fraudulent scheme to obtain money, evidence of transaction occurring more than year after indictment *held* inadmissible, as being so far removed that it would throw no light on ques-

tion of intention at time of alleged scheme to defraud as set forth in indictment.

**9. Post office ⚖➔49—Evidence relating to efforts of another person to organize new company held properly excluded, in prosecution for devising scheme to obtain money by false representations and using mails therein, as not relating to companies alleged to have been formulated by defendant (Penal Code, § 215 [Comp St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385) for using mails in fraudulent scheme to obtain money, evidence relating to transactions of third party in effort to organize new company, and not referring to companies alleged to have been formulated by defendant, *held* properly excluded.

**10. Criminal law ⚖➔413(1)—Evidence of attempt to formulate new company to finance companies, on which prosecution for scheme to obtain money by false representations and use of mails therein was based, not shown to have met with success, held properly excluded as being self-serving declaration (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for using mails in fraudulent scheme to obtain money, evidence relating to attempt to formulate new company for purpose of financing companies on which prosecution was based, but not shown to have resulted in success, *held* properly excluded, as being self-serving declarations.

**11. Criminal law ⚖➔829(1).**

Requested instructions, fully covered by other instructions given, *held* properly refused.

**12. Post office ⚖➔35—In prosecution for devising scheme to obtain money by false representations and use of mails therein, that defendant believed false representations were true and that promises would be fulfilled held no defense (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for use of mails in fraudulent scheme to obtain money, that defendant believed false representations made by him were true and that promises would be fulfilled *held* no defense.

**13. Post office ⚖➔48(4)—Allegation of conversion in indictment for devising scheme to obtain money by false representations and use of mails therein held superfluous, as offense is improper use of mails in carrying out scheme (Penal Code, § 215 [Comp. St. § 10385]).**

Allegation of conversion in indictment under Penal Code, § 215 (Comp. St. § 10385), for use of mails in fraudulent scheme to obtain money, *held* superfluous, since offense is improper use of mails in carrying out alleged fraudulent scheme.

**14. Post office ⚖➔50.**

Question of wrongful intent of defendant charged with devising scheme to obtain money by false representations and use of mails therein was for jury.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Robert David Kercheval, otherwise called "Bob" Kercheval, otherwise called "Dave" Kercheval, was convicted of devising a scheme to obtain money by false and fraudulent representations and the use of the mails in carrying out said fraudulent schemes, and he brings error. Affirmed.

Paul Jones, of Texarkana, Ark. (Paul Jones, Jr., of Texarkana, Ark., on the brief), for plaintiff in error.

S. S. Langley, U. S. Atty., of Ft. Smith, Ark., and James D. Shaver, Sp. Asst. U. S. Atty., of Texarkana, Ark.

Before STONE, KENYON, and BOOTH, Circuit Judges.

KENYON, Circuit Judge. Plaintiff in error was tried and convicted in the District Court of the United States for the Western District of Arkansas on five counts of an indictment charging him with violation of section 215 of the Penal Code (Comp. St. § 10385), viz. the devising of schemes to obtain money by false and fraudulent representations, and the use of the mails in carrying out said fraudulent schemes. The first count of the indictment sets forth particularly the plan and method. The others are based on different overt acts. Defendant was acquitted on the second count.

The plan or scheme in brief was as follows: Defendant promoted two oil stock companies known as the Poindexter Royalty Syndicate and the Smackover Jack Pot Syndicate; the latter being a trust estate formed to engage in the general oil business. The former had an authorized capitalization of $300,000, divided into 10,000 units, or mineral deed assignments, of the par value of $30 each. Defendant, under the name of "Dave" Kercheval, was sole trustee. The Smackover Jack Pot, the other corporation, had an authorized capital of $5,000,000, divided into 100,000 units or assignments of interest of the par value of $50 each. Defendant under the title of "Bob" Kercheval was sole trustee of this corporation. Defendant also organized a brokerage company known as the American Finance Corporation for the purpose of assisting in selling shares and mineral deeds of the other two enterprises. All of these concerns had their principal place of business at Camden, Ark., and were dominated and controlled by defendant. The assets of these companies consisted of some leases of oil royalties.

The representations charged in the indictment as made to induce the purchase of shares and mineral deeds were many, some of

them being as follows: That defendant would declare a 50 per cent. cash dividend, which would be paid at a future date to all holders of shares or assignments of interest in the two syndicates; that Jack Pot was not in the class of fly-by-night concerns, but was an organization built on principle, which would carry forward and grow to larger successes year after year; that it was organized so as to take charge of the changing conditions in the oil industry; that the stockholders were not gambling on the outcome of the drilling of one well; that persons who bought Jack Pot shares would be in the big "whack-up" that would come within 90 days to 6 months; that defendant could buy production at a tremendous discount, and that he was therefore making a special offer of four $50 shares for $50, and eight $50 shares for $100; that Jack Pot was a fair, square proposition; and there was no reason why every investor would not reap a big harvest; that defendant needed hands to harvest the oil crop of dollars he was sure to make; "that the Smackover Jack Pot ante was $10;" "that the sky was the limit," and "there was no rake-off;" that the Capital Syndicate Company, of Denver, Colo., had underwritten the stock of defendant, and that the Capital Syndicate would offer for public subscription Jack Pot certificates at par, that is, $50 each; that said securities would be traded in throughout the United States and Canada; that the Smackover Jack Pot had made a deal whereby it had made a profit of $13,000 and would pay all its stockholders on April 10, 1923, a 50 per cent. dividend; that parties who were not lucky enough to be in on the per cent. "whack-up for April, 1923," could come in for the "'divey' which defendants expected to make in May"; that parties buying Poindexter Royalty mineral deeds would become the permanent owners, and were buying something worth every cent they were asked to pay for the same; that the "Jimmy" Cox well was less than one-half mile from the Poindexter holdings, was making considerable gas and oil, and would be one of the "gusher" type wells in the Smackover field; that Poindexter warranty royalty deeds were an exceptionally good investment.

The indictment charges that all of these representations were false and fraudulent, were known by the defendant to be such, and were made with the purpose and intent to induce persons to pay him large sums of money for shares or mineral deed interests of the said companies and syndicates, and that in truth and fact large numbers of people did make purchases thereof. The indictment sets forth in the various counts letters and advertisements which were sent through the mails. Most of them contain glowing descriptions as to the future of the two oil companies, statements as to dividends paid, and the alluring prospects of securing something for nothing. The crop of gullible subjects resulted in a fruitful harvest to defendant.

On each of the five counts of the indictment upon which defendant was convicted he was sentenced to imprisonment for three years in the penitentiary and to pay a fine of $300, the terms of imprisonment to run concurrently. The case is here on writ of error. [1, 2] We are presented with 76 assignments of error. Some are clearly insufficient under the rules of this court. Some present no substantial questions. Fifteen are not argued; hence abandoned. Lee Tung v. United States (C. C. A.) 7 F.(2d) 111. We attempt to group the various assignments, as there is no necessity for taking them up seriatim.

Assignment No. 1 relates to alleged error of the court in overruling defendant's motion in arrest of judgment. This motion was an attack upon the indictment for a number of reasons (some of which had been raised upon demurrer), viz. that it did not state facts sufficient to constitute a public offense against the United States; that the allegations thereof did not state the scheme, artifice, or device to defraud with sufficient certainty to inform defendant of the offense with which he was charged. This court has considered similar indictments in a number of cases in the last few years, some of which arose out of the same oil fields, and this indictment is substantially similar to the indictments in those cases so recently decided by this court. In fact, this case bears a very marked resemblance to them. Every question raised here as to the indictment has been passed on adversely by the court in these cases. Marr v. United States (C. C. A.) 8 F.(2d) 231; Morris v. United States (C. C. A.) 7 F.(2d) 785; Chew v. United States (C. C. A.) 9 F.(2d) 348; Davis v. United States (C. C. A.) 9 F.(2d) 826. See, also, as to sufficiency of the indictment, Rimmerman et al. v. United States, 186 F. 307, 310, 108 C. C. A. 385; May et al. v. United States, 199 F. 53, 61, 117 C. C. A. 431; Gould et al. v. United States, 209 F. 730, 734, 126 C. C. A. 454; Mounday et al. v. United States, 225 F. 965, 140 C. C. A. 93; Goldberg v. United States (C. C. A.) 277 F. 211.

[3] Assignments of error 5 to 17, inclusive, and 44 and 45 challenge the admission of evidence. Except assignment 17 they relate to telegrams, advertisements, letters, and circulars sent to various people to persuade them

to buy shares or deeds of interest in the so-called syndicates. The objection made by defendant to them is that they are evidence tending to show that defendant schemed to make other and different representations, pretenses, or promises than those set forth in the indictment. Of course, there must be proof of some overt act set out in a count to warrant conviction thereon, but proof of other similar acts, for the commission of which defendant could not be convicted under the indictment, are nevertheless admissible as bearing on the question of fraudulent intent, which is a material allegation of the indictment. We are satisfied the evidence objected to and pointed out in these various assignments, though not set forth in the indictment, was admissible on the question of intent, and as showing the character of the scheme in which defendant was engaged. In urging objection thereto it seems to us there is a failure to recognize the distinction we have pointed out. See Samuels v. United States, 232 F. 536, 146 C. C. A. 494, Ann. Cas. 1917A, 711; Linn v. United States, 234 F. 543, 148 C. C. A. 309; McKnight v. United States, 252 F. 687, 164 C. C. A. 527; Hallowell et al. v. United States, 253 F. 865, 165 C. C. A. 345; Davis v. United States (C. C. A.) 9 F.(2d) 826.

Assignment 17 relates to the plea of guilty entered by defendant in open court. It was a formal plea, and the court in its instructions to the jury was careful to guard the same telling them:

"The plea of guilty is introduced as evidence by the government. You are to take that into consideration; that is, you will take it into consideration upon a certain condition. If you find that Mr. Kercheval made that plea of guilty, and that no promise was held out to him for the purpose of getting him to make that plea, or if you find that he was notified before he made the plea that nothing that was ever said to him with reference to it theretofore would be met, then it is evidence for you to consider in connection with the other evidence in the case. If you find out, however, that he was included, and you are to take all the facts and circumstances into consideration—you are to take Mr. Kercheval's intelligence into consideration in connection with whether or not he could be deceived in a matter of that kind, I say if you find that he was deceived, that this was brought about by conversations that he had had with reference to it, and that he made that plea of guilty when as a matter of fact he was not guilty, then you will disregard that particular part

of it and consider just the other testimony in the case."

[4, 5] While there was evidence of defendant that some promise had been made him by a special assistant district attorney, Mr. Arterberry, as to punishment in case he pleaded guilty, the evidence of the district attorney shows that defendant was fully informed by him before the plea that if he did plead guilty it would be upon his own volition and that no promises whatever would be made to him. It is true in the federal courts, as stated in Ziang Sung Wan v. United States, 266 U. S. 1, 14, 45 S. Ct. 1, 3 (69 L. Ed. 131), that "the requisite of voluntariness is not satisfied by establishing merely that the confession was not induced by a promise or a threat. A confession is voluntary in law if, and only if, it was, in fact, voluntarily made." There is no claim here of any compulsion applied to defendant. The court left it to the jury as to whether the plea of guilty was voluntary or made under some kind of a promise held out to him by which he was deceived. If the latter it was to be entirely disregarded. Certainly this was all defendant could claim under the facts of this record. McBryde v. United States (C. C. A.) 7 F.(2d) 466.

In the motion made by defendant to set aside the judgment he admits that he had pleaded guilty. The purpose was to reduce the punishment, but if this failed he asked to withdraw his plea, and that the judgment be set aside. We know of no reason why the plea of guilty was not admissible under all these circumstances for what it might be worth. It was not conclusive of guilt, and the court so instructed the jury. The defendant probably knew better than any one else whether or not he was guilty. Under the evidence in this case a plea of guilty upon his part would have seemed a very reasonable thing. We see no substantial or prejudicial error in the admission of any of the evidence complained of.

Assignments of error 20 to 43, inclusive, and 46 and 47, relate to the rejection of certain testimony offered by defendant.

[6] Assignments 21, 22, 23, and 32 relate to the refusal of the court to permit witnesses to express opinions and to relate purely hearsay testimony; e. g., whether it was not the opinion of oil men that the trend of the oil lay between certain fields where the Poindexter land was; again, whether in the opinion of the witness the articles of literature in reference to the Poindexter Syndicate overestimated or overrated the value of such land; and again, whether it was not generally re-

ported in oil circles that the "Jimmy" Cox well had come in and was producing oil and gas. Objections thereto were sustained.

[7] Assignment 24 relates to the refusal of the court to permit witness Brown to testify to what J. D. Reynolds told him (which was clearly hearsay). It may be noted that defendant secured the advantage of this conversation, as Brown on cross-examination testified fully thereto.

[8] Assignments 27, 28, 29, 30, and 31 refer to a transaction which occurred more than a year after the indictment was returned, viz. the transfer of an oil lease in Texas to the "Jack Pot." This transaction was so far removed that it could throw no light on the question of intention at the time the alleged scheme to defraud set forth in the indictment was formulated and carried out, and was inadmissible.

[9] Assignments 34 and 35 relate to the attempt to show certain options as oil leases claimed to have been obtained by one Jack Conway. Assignment 34 is entirely too indefinite to challenge attention. However the transactions of Conway referred to were in July, August, and September, 1923, and relate to the effort to organize a new company, and not to the Jack Pot or the Poindexter Royalty Syndicate Companies. Even were the question properly preserved, it is apparent there was no error in the court's ruling excluding the evidence.

[10] Assignments of error 36 to 43 refer to the offered evidence and rejection thereof with relation to an attempt to formulate a new company to be known as the K. C. Petroleum Company. The purpose of the new formation was to raise money to finance production in the Smackover oil field. There is controversy in the evidence as to whether the new plan bore any relationship to the "Jack Pot." Defendant strenuously contends that one of its purposes was to raise money to finance the Jack Pot. Defendant did testify that the K. C. Petroleum Company was an organization he was attempting to perfect for the purpose of raising capital with which to carry on the operations of the Smackover Jack Pot. Again, he testifies that he was not going to raise money to finance the Jack Pot, but that he was raising money to finance production in the Smackover field. The Jack Pot at that time seems to have gone the way of these fly-by-night companies. Its money was completely exhausted. "Finis" had been written on its efforts. Of course, as defendant practically was the Jack Pot, there was some relationship between the K. C. Petroleum Com-

pany and the Jack Pot. The whole transaction as to the K. C. Petroleum Company seems to have been an attempt entirely upon the part of the defendant to interest men in a new company, which, according to the evidence, met with little response. From an examination of the evidence it is apparent that the new concern actually had nothing to do with the Jack Pot or the Poindexter Royalty Syndicate. There was no error in excluding the evidence of the alleged attempted formation of the new K. C. Petroleum Company. The contract of agreement and the subscription agreement attempted to be introduced in evidence are merely self-serving declarations.

[11] Assignments 55 to 67 relate to the refusal of the court to give certain requested instructions. Some of these are not accurate statements of the law, or combine incorrect with correct statements in such manner that the court would not be warranted in giving them. The other requests applicable to the facts are fully covered by the instructions, and the court, having given a correct statement of the law, is not required to repeat it, in the words of counsel. Ingram v. United States (C. C. A.) 5 F.(2d) 940.

We refer to some of the requested instructions. For instance, assignment 55 is based upon the court's refusal to give instruction No. 9, which refers to the burden being upon the government to prove the representations made by defendant were false. Assignment 56 refers to requested instruction No. 10, which bears on the question of reasonable doubt and the interest and good faith of defendant in making representations. Both of these matters are fully and fairly covered by the instructions of the court.

[12] Assignment No. 59 relates to requested instruction No. 14, which is as follows: "If you find from the evidence that the defendant actually believed the representations made by him were true, and that the promises made by him would be fulfilled, however inaccurate or untrue such representations, and however incapable of performance such promises may be found by you to have been in fact, such belief constitutes a complete defense to the charges set forth in the indictment." It is apparent that this instruction does not correctly state the law. Moore et al. v. United States (C. C. A.) 2 F.(2d) 839; Slakoff v. United States (C. C. A.) 8 F.(2d) 9.

[13] Other requested instructions raise the question of conversion by the defendant. Conversion is not an element of crime under section 215 of the Penal Code. While there

is an allegation of conversion in the indictment it was superfluous. The offense is the improper use of the mails in carrying out the alleged fraudulent scheme. Whitehead et al. v. United States, 245 F. 385, 157 C. C. A. 547; Wine v. United States (C. C. A.) 260 F. 911; Calnay v. United States (C. C. A.) 1 F.(2d) 926.

There is little to be gained from a reference to each of the requested instructions and the assignment of error based thereon. We have examined the various instructions requested, and compared them with the charge given by the court, and are satisfied that, where the requested instructions correctly state the law, the matter was fully covered by the instructions of the court.

Assignments 19 and 48 'to 54, inclusive, cover the court's refusal to direct a verdict upon motion of the defendant at the close of all the evidence. We have carefully read all the evidence offered in this case, and are satisfied there was sufficient substantial evidence to prove the scheme as alleged in the indictment; that the representations were false, and known by defendant to be false, or made with reckless disregard of the truth; and that the mails of the United States were freely used in carrying out. the schemes and devices of defendant.

[14] The vital question in the case is the wrongful intent of defendant. That was for the jury. The theory of the defense seems to be that, because the business which defendant was promoting eventually might have been successful, and there. were opportunities in the oil business for great fortunes, defendant was absolved from any false pretenses or fraudulent representations. Such would constitute a new and unsafe standard of business conduct.

In such a lengthy trial, with the volume of evidence offered and introduced, there is, of course, probability of some error. We have examined this record with the care that the importance of the case demands, and are satisfied that the evidence was sufficient to sustain the charges in the five counts of the indictment upon which defendant was convicted; that there were no substantial errors in the admission of evidence, the refusal to admit offered testimony, the denial of requested instructions, or in the instructions given, prejudicial to this defendant. The errors, if any, were of a minor nature.

The judgment of the trial court is affirmed.