## BARNES v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
March 15, 1928.

No. 7792.

1. **Criminal law ⊜⟹273—Defendant, pleading guilty to using mails to defraud by selling worthless securities, admitted devising of scheme and mailing of letter in executing it (Pen. Code, § 215 [18 USCA § 338]).**

Defendant, by pleading guilty to charge of devising scheme to defraud by selling worthless securities and mailing letter in executing it, contrary to Penal Code, § 215 (18 USCA § 338), held, to have admitted devising of scheme to defraud and mailing of letter and inclosures, as charged, in executing scheme and attempting to execute it, though admission that mailing was in execution of scheme would not be controlling, if matter mailed showed on face that it could not be for such purpose.

2. **Post office ⊜⟹35(8)—In prosecution for using mails to defraud, matter mailed need not be effective to carry out scheme (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution for devising scheme to defraud by selling worthless securities and mailing letter in executing such scheme, contrary to Penal Code, § 215 (18 USCA § 338), matter mailed need not be effective to carry out scheme.

3. **Post office ⊜⟹35(8)—In prosecution for using mails to defraud, matter mailed need not in itself be calculated to carry out scheme (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution for devising scheme to defraud, by selling worthless securities and mailing letter in executing such scheme, contrary to Penal Code, § 215 (18 USCA § 338), matter mailed need not in itself be calculated to carry out scheme.

4. **Post office ⊜⟹35(2)—In prosecution for using mails to defraud, matter mailed need not be criminal, nor disclose fraudulent purpose (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution for devising scheme to defraud, by selling worthless securities and mailing letter in executing such scheme, contrary to Penal Code, § 215 (18 USCA § 338), matter mailed need not be criminal or objectionable, nor disclose fraudulent purpose.

5. **Post office ⊜⟹35(2)—In prosecution for using mails to defraud, matter mailed need not show on face that it was in furtherance of scheme (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution for devising scheme to defraud, by selling worthless securities and mailing letter in executing such scheme, contrary to Penal Code, § 215 (18 USCA § 338), matter mailed need not show on its face that it was in furtherance of scheme to defraud.

6. **Post office ⊜⟹35(2, 5)—In prosecution for using mails to defraud, matter mailed must be step in attempted execution of scheme, mailed with intent to aid its execution (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution for devising scheme to defraud, by selling worthless securities and mailing letter in executing such scheme, contrary to Penal Code, § 215 (18 USCA § 338), matter mailed must have some relation to and must be step in attempted execution of scheme, and must be mailed with intention to aid in its execution.

7. **Post office ⊜⟹49(11)—On charge of using mails to defraud by selling worthless securities, letter recommending securities to customer held to show purpose of executing or attempting to execute scheme (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution for devising scheme to defraud, by selling worthless securities and mailing letter in executing such scheme, contrary to Penal Code, § 215 (18 USCA § 338), letter to prospective customer recommending certain securities held to show purpose of executing or attempting to execute scheme within statute; defendant's admission in plea of guilty that mailing was in execution of scheme being controlling, unless letter showed on face that it could not be for such purpose.

8. **Post office ⊜⟹35(2)—In prosecution for using mails to defraud by selling worthless securities, it is no defense that defendant also dealt in good securities (Pen. Code, § 215 [18 USCA § 338]).**

Where defendant, in prosecution under Penal Code, § 215 (18 USCA § 338), for using mails to defraud by selling worthless securities, mailed letter in attempting to execute such scheme, it is no defense that defendant may have also dealt in good securities, as to which no misrepresentations were made.

9. **Post office ⊜⟹48(4¼)—Indictment for using mails to defraud need not allege that defendant intended to obtain benefit by execution of scheme (Pen. Code, § 215 [18 USCA § 338]).**

It is not an essential element to indictment charging scheme to defraud, and use of mails in executing such scheme, contrary to Penal

Code, § 215 (18 USCA § 338), that defendant intended to obtain some benefit by execution of scheme.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Joseph U. Barnes was convicted of devising a scheme to defraud and mailing a letter in executing it contrary to 18 USCA § 338, and he brings error. Affirmed.

M. H. Boutelle and A. H. David, both of Minneapolis, Minn., for plaintiff in error.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiff in error pleaded guilty to the first count of an indictment, which alleged that he and others had devised a scheme to defraud and had mailed a letter in executing the scheme, contrary to the provisions of section 215, Penal Code (18 USCA § 338). Prior to this plea the plaintiff in error had demurred to the indictment claiming that it stated no offense. After sentence, the plaintiff in error obtained this writ of error, and thereby challenges the sufficiency of the first count of the indictment to support the judgment. The chief ground of objection is that the letter set out in the indictment and alleged to have been mailed in pursuance of the scheme to defraud does not show a purpose of executing, or of attempting to execute, the scheme to defraud. The indictment charged, in substance, that the plaintiff in error Joseph U. Barnes, Richard C. Thompson, Eugene B. Barnes, and Earl M. Andereck, unlawfully devised a scheme to defraud Selmer M. Johnson and others, and that the scheme was that Joseph U. Barnes, being the president, Richard C. Thompson, being the vice president, Eugene B. Barnes, being the treasurer, and Earl M. Andereck, being the secretary, of the Interstate Securities Company, a South Dakota corporation, having an office at Minneapolis, would fraudulently pretend to be engaged in the business of selling first mortgages and bonds, secured by first mortgages on real estate, and would pretend that all the mortgages were first mortgages on good farming lands, and that the mortgages and bonds were wise, safe, secure, and bed-rock investments and of the full value stated on the face of such securities. It also charged that these representations would be made by the defendants for the purpose of obtaining purchasers for the mortgages and bonds, who would pay to defendants the face value

thereof. It then charged that the defendants did not intend to sell any mortgages, or bonds secured by mortgages, which would be first liens on good farming lands or on real estate, did not intend that the mortgages and bonds would be wise, safe, secure, and bed-rock investments, and of the value stated on the face thereof, but intended to sell bonds and mortgages of no value, and that the mortgages would be on lands incumbered by prior mortgages for the full value of the lands, and the mortgages would be executed by persons of no financial responsibility. The indictment then alleges that the defendants, after having devised this scheme, in and for executing the scheme and attempting so to do, placed in the post office at Minneapolis, Minn., a letter with inclosures in a postage prepaid envelope, directed to A. W. Johnson at Albert Lea, Minn. This letter and one of the inclosures is set forth in full in the indictment. The letter is as follows:

"Business Established 1885

"Interstate Securities Company,
"Farm Mortgages, City Mortgages, Bonds,
"Capital and Surplus $300,000.00.

"Officers:
"Joseph U. Barnes, President,
"Richard C. Thompson, Vice Prest.,
"Eugene B. Barnes, Treasurer,
"Earl M. Andereck, Secretary.

"Directors:
"Hon. E. C. Issenhuth,
"Joseph U. Barnes,
"Frederick B. Wright,
"Richard C. Thompson,
"Oric O. Whited,
"Eugene B. Barnes,
"George W. Andrick,
"Earl M. Andereck.

"Minneapolis, Minnesota, March 31, 1922.

"A. W. Johnson, Albert Lea, Minn.—Dear Friend Johnson: I was greatly delighted this morning to receive your letter requesting investments and was also greatly pleased to see the position to which you have been elected. In making an investment, the fundamental factor is safety; the next important factor is rate. I am inclosing descriptions of several mortgages which I can recommend to you, in the full confidence that they will prove very desirable from every standpoint.

"While several of these are drawn at 6 per cent., or 6½ per cent., we will net you 7 per cent. on any which you select. In addition, we will allow a 2 per cent. cash dis-

count as a slight remuneration for your services in going to the bother to handle the investments. For your brother, I would suggest either the Leamy $1,000 mortgage or $1,000 of the mortgage bonds in either the Sarbaugh, Jensen, or Lindahl. These latter three are ordinary mortgages, in which the borrowers have signed a number of gold bonds for the aggregate amount loaned, instead of signing one note. The advantage is that it gives the small investor an opportunity to participate in the high grade mortgages, even though he may not have enough money to invest, to allow him then to purchase the entire issue.

"In the case of the three bond issues the insurance, recorded mortgage, and completed abstract are held in our vaults, we indorsing the bonds purchased and issuing title guaranty certificates. We have found the bond issues especially desirable, as there usually is a large equity, never making it necessary to resort to foreclosure.

"For your other party, we would suggest either the Ogren $600 or the Ostrander $800. The Ogren is a good title quarter section farm, which is valued at about five times the amount loaned. We find these small loans excellent, as the borrowers are making the farms more valuable from year to year.

"The Ostrander $800 is on a farm on which we had a loan of $1,000 in 1910. That $1,000 loan was paid off, and recently Mr. Ostrander came to us and wanted to borrow $800. And the fact that 12 years ago we had a larger loan on the same place, and it was paid off, makes us extremely confident that the $800 loan will be eminently satisfactory.

"When making a selection, I think it would be well for you to make first and second choice in each case, as there are only a few of the bonds left and they are selling every day.

"As far as interest is concerned, we will make a note of the interest coming to us out of the first coupon, so you will not have to pay the accrued interest at this time. If you wish to get your funds at work promptly, you can send us a draft for the proper amount, less your 2 per cent., or if you prefer send us a draft for the entire amount and we will send you the 2 per cent. by separate check.

"The farmers are going to be prosperous, and farm mortgages the safest investments in the country. I am confident that the inclosed offerings are worthy of your entire confidence and shall be very glad to hear from you.

"With personal regards, sincerely yours,
"Richard C. Thompson,
"RCT–R                    Vice President."

The inclosure is entitled "Office of Interstate Securities Company." It undertakes to describe a loan made to Fern H. Jensen, stating particulars about its amount, rate of interest, date of payments, description of the lands securing it, and ends with the statement: "We believe this farm furnishes ample security for the bonds with this loan and that the bonds will prove entirely satisfactory investments. Interstate Securities Company." The inclosure was indorsed with a further description of the Fern H. Jensen loan and the statements:

"Negotiated by Interstate Securities Company."

"The money you put into our mortgages is wisely and safely invested. Interstate mortgages are good mortgages because: * * *

"Fourth. You get your interest, with no charge for collecting it. Our company also looks after insurance on the buildings, payments of taxes by borrowers, and all other matters, without expense.

"Fifth. 'Millions Loaned Without Loss' is the guaranty we give you that our mortgages are bed-rock investments. Bankers and other careful investors have bought mortgages from our management for 35 years. For the best rate of interest consistent with the best of security, put your money into Interstate mortgages."

[1] The plaintiff in error claims that the scheme to defraud is alleged as the scheme of the four defendants as individuals, while this letter and inclosure were executed by the Interstate Securities Company as a corporation, and could have had no effect in executing the scheme to defraud. In considering the questions involved, it must be conceded that the plaintiff in error by his plea of guilty admitted (1) the devising of the scheme to defraud; (2) the mailing of the letter and inclosures; (3) in executing the scheme and attempting to execute it. The admission that the mailing was in execution or attempted execution of the scheme, is not the admission of a mere legal conclusion. Headley v. United States (C. C. A.) 294 F. 888, 889. It is an admission that the mailing had a definite relation to the scheme to defraud, and that the purpose involved was to take a step in forwarding and consummating the scheme. This admission would not be controlling, if the matter mailed shows on its face that it could not be for the purpose of execution or of attempted execution of the scheme. It might appear that a letter was mailed before a scheme was devised, or was mailed after the scheme was fully accomplished, or that it was mailed in connection

with an entirely different transaction, and in such cases the mailing could not be said to be for the purpose of executing the scheme. [2-6] It is settled that the matter mailed need not be effective to carry out the scheme, Stewart v. United States (C. C. A.) 300 F. 769, 775; Newingham v. United States (C. C. A.) 4 F.(2d) 490, 492; and that it need not in itself be calculated to carry out the scheme, Durland v. United States, 161 U. S. 306, 315, 16 S. Ct. 508, 40 L. Ed. 709; Tincher v. United States (C. C. A.) 11 F. (2d) 18, 20; Savage v. United States (C. C. A.) 270 F. 14, 18; Lemon v. United States (C. C. A.) 164 F. 953, 958; and that it need not be criminal or objectionable, nor disclose a fraudulent purpose, Brewer v. United States (C. C. A.) 290 F. 807, 808; Chew v. United States (C. C. A.) 9 F.(2d) 348, 352. It need not show on its face that it was in furtherance of the scheme, Bowers v. United States (C. C. A.) 244 F. 641, 649; McLendon v. United States (C. C. A.) 2 F.(2d) 660, 661; but it must have some relation to and must be a step in the attempted execution of the scheme, McLendon v. United States (C. C. A.) 2 F.(2d) 660, 661; and be mailed with the intent to aid in its execution, Brewer v. United States (C. C. A.) 290 F. 807, 808.

In the case of Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 40 L. Ed. 709, the court said: "It is enough if, having devised a scheme to defraud, the defendant with a view of executing it deposits in the post office letters, which he thinks may assist in carrying it in to effect." In illustrating this principle the court said in the case of United States v. Wupperman (D. C.) 215 F. 135:

"If the defendant A has devised his scheme to defraud and has B in mind as the victim and writes B to come to his home to dinner and deposits the letter in the mail, the purpose being to say or learn something at such dinner, what being entirely uncertain, which will aid A to execute his scheme, the government is not bound to guess or speculate as to what would or was to be said at such dinner. It is all-sufficient to say, having charged the scheme, that A 'for the purpose of executing such scheme or artifice, or attempting so to do, placed the letter describing it, in the mails.' The fact that it was mailed in aid of the execution of the scheme would be proved on the trial by showing a variety of facts, acts, and declarations perhaps, but it would be unnecessary to allege these in the indictment."

[7] The plaintiff in error does not undertake to demonstrate that the letter and its inclosures could not have aided in the execution of the scheme. His contention seems to be that the letter, on its face, appears to be an offer by the corporation to sell its securities, and representations by the corporation relating to such securities. If we accept this construction of the letter, the letter may have been a first step in executing the scheme. It may have been written for the purpose of inspiring the confidence of prospective purchasers in the individuals whose names are listed as the officers, and as directors of a corporation having a capital and surplus of $300,000, and dealing successfully and carefully in mortgages and bonds. It may be, also, that the securities mentioned in the letter and inclosure were of a class that would bear investigation. But this is all consistent with a purpose of the defendants, as individuals, in mailing the letter, to induce the purchasers, after further negotiations, to accept worthless securities owned by the officers personally. Under the allegations of the indictment the government might have proved, at a trial, that as the result of this letter, the addressee entered into negotiations with the plaintiff in error and was induced by him to buy worthless mortgages owned by the plaintiff in error, and it might have proved, by the circumstances, by admissions, or by direct testimony that it was a part of the plan of the plaintiff in error that the first letters sent to prospective purchasers should make attractive offers, and should appear as offers by the corporation, and should be followed by solicitations to purchase worthless securities held by the plaintiff in error.

[8] If the letter was mailed in attempting to execute the scheme to sell some worthless securities, as alleged, it was no defense that the defendants or the corporation may have also dealt in good securities, as to which no misrepresentations were made. Blanton v. United States (C. C. A.) 213 F. 320, 324, Ann. Cas. 1914D, 1238. We find nothing in the letter and inclosure mailed which is not consistent with a purpose of carrying the scheme into effect, as alleged in the indictment and admitted by the defendant's plea.

[9] The plaintiff in error makes a suggestion that the indictment should have charged that the plaintiff in error intended to appropriate the moneys received to his own use. It is not an essential element of an indictment charging a scheme to defraud, under section 215 of the Penal Code, that the defendant intended to obtain some benefit by the execution of the scheme. Kellogg v. United States (C. C.

A.) 126 F. 323, 325, 326; Chew v. United States (C. C. A.) 9 F.(2d) 348, 352; Nelson v. United States (C. C. A.) 16 F.(2d) 71, 76; Levinson v. United States (C. C. A.) 5 F. (2d) 567, 569; Kercheval v. United States (C. C. A.) 12 F.(2d) 904, 908; Calnay v. United States (C. C. A.) 1 F.(2d) 926, 927.

The judgment will be affirmed.