## DURLAND *v.* UNITED STATES.

## SAME *v.* SAME.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Nos. 528, 529. Argued October 29, 1895. — Decided March 2, 1896.

The provision in Rev. Stat. § 5480, as amended by the act of March 2, 1889, c. 393, 25 Stat. 873, that "if any person having devised or intending to devise any scheme or artifice to defraud . . . to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the Post Office Establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet, or advertisement, in any post office, branch post office, or street or hotel letter-box of the United States, to be sent or delivered by the said Post Office Establishment, or shall take or receive any such therefrom, such person so misusing the Post Office Establishment shall, upon conviction, be punishable," etc., includes everything

·designed to defraud by representations as to the past or present, or suggestions and promises as to the future; and it was enacted for protecting the public against all intentional efforts to despoil, and to prevent the post office from being used to carry them into effect.

The refusal to quash an indictment on motion is not, generally, assignable for error.

The omission in an indictment for violating the above act to state the names of the parties intended to be defrauded, and the names and addresses on the letters, is satisfied by the allegation, if true, that such names and addresses are to the jury unknown.

The offence described in the statute is committed when the contriver of a scheme to defraud, with a view of executing it, deposits letters in the post office which he thinks may assist in carrying it into effect, whether they are so effective or not.

The objection that an indictment is multifarious is presented too late, if not taken until after the verdict.

THESE cases have so much in common that they may be considered together. Each is the record of the conviction of the plaintiff in error in the District Court of the United States for the Eastern District of Pennsylvania of a violation of section 5480, Rev. Stat., as amended by the act of March 2, 1889, c. 393, 25 Stat. 873. In neither record is preserved the testimony given on the trial, or the charge to the jury. The only questions for consideration are those which arise on the indictments. In the first, the indictment charged that defendant "did knowingly, wilfully and falsely devise a scheme and artifice to defraud, that is to say, by divers false pretences and subtle means and devices to obtain and acquire for himself of and from divers persons to this grand inquest unknown, a large sum of money, to wit, the sum of fifty dollars each, and to cheat and defraud each of the said divers persons thereof by then and there representing, among other things, that the Provident Bond and Investment Company would upon the payment of a certain sum of money, to wit, the sum of ten dollars, and a further sum of five dollars monthly thereafter, by each of the said divers persons, issue to each of the said divers persons a bond in the words and manner following, to wit."

Giving a copy of the bond, the indictment proceeded:

"And that the said bonds would mature in accordance with

paragraphs third, fourth, fifth, sixth, seventh and eighth of said bond hereinbefore set out, and that the redemption value of the said bond when called and the sum of money payable therefor to the said divers persons by the said Provident Bond and Investment Company would be the sum specified and at the time named, and upon the payments of the sums of money named in the circular issued by the said Provident Bond and Investment Company, which is in the words and matter following, to wit:

### "A Nut for Lottery Cranks to Crack.

" We give below our graduatory scale of redemption values, which is a complete refutation of the charge that a 'lottery' element enters into the methods of the Provident Bond and Investment Company. It will be observed that a steadily increasing cash value applies to every bond in force from its issue to redemption. That every bond of equal age has the same cash value.

" It is a further fact that every bond is non-forfeitable and interest-bearing, having both 'cash surrender' and loan values. Where does the lottery element come in?

### "Redemption Scale.

" Scale of current redemption values under the current system of tontine investment, showing profit over total cost upon each $1000 bond from date of issue to face value; $500 bonds, one half of said amounts, both cost and profit."

After this followed the scale referred to in the last clause, which, commencing —

| " No. of months in force. | Cost to holder, including premium. | Cash paid by Co. for redemption. | Profits over cost. | Per cent of profit. |
|---|---|---|---|---|
| 1............. | $15 00 | | | |
| 2............. | 20 00 | | | |
| 3............. | 25 00 | $30 00 | $5 00 | 20 |
| 4............. | 30 00 | 40 00 | 10 00 | 33 |
| 5............. | 35 00 | 50 00 | 15 00 | 42.8 |
| 6............. | 40 00 | 60 00 | 20 00 | 50 " |

ran up to and included ninety-one months. After the scale appears the balance of the circular, as follows:

"Such is the legitimate operation of 'the current system of tontine investment,' of which the Provident Bond and Investment Company is the exponent and its president is the author.

"N.B. — The basic principle of the above table is copyrighted. Infringements without due authority of the author will be prosecuted."

And then the indictment, in its first count, closed with these words:

"Whereas in truth and in fact the said John H. Durland, being then and there the president of the said Provident Bond and Investment Company, did not intend that the said bonds would mature in accordance with paragraphs third, fourth, fifth, sixth, seventh and eighth of the said bond, and that the redemption value of the said bond when called and the sum of money payable therefor to the said divers persons by the said Provident Bond and Investment Company, would be the sum specified and at the time named and upon the payments of the sums of money named in the circular issued by the said Provident Bond and Investment Company, as he, the said John H. Durland, then and there well knew, and the said John H. Durland intended then and there by said false representations to obtain for his own use the sum of money paid by each of the divers persons for said bond, to wit, the sum of fifty dollars each, which said scheme and artifice to defraud was to be effected by him, the said John H. Durland, opening a correspondence and communication with each of the said divers persons by means of the Post Office Establishment of the United States and by inciting such divers persons to open communication with him, the said John H. Durland, so devising and intending; and he, the said John H. Durland, did heretofore, to wit, upon the day and year aforesaid, so devising and intending in and for executing such scheme and artifice to defraud and attempting so to do, place and cause to be placed in a post office of the United States at Philadelphia to be sent and delivered by the said Post Office Establishment,

divers letters and packets, to wit, twenty letters and circulars, directed respectively to the said divers persons, the names and addresses of whom are to this grand inquest unknown, contrary to the form of the act of Congress in such case made and provided and against the peace and dignity of the United States of America."

In the second case the indictment charged substantially the same scheme to defraud, but specified that the purpose of the defendant was "to obtain and acquire for himself of and from another person, to wit, one W. S. Burk, at Chester, Pennsylvania, a large sum of money, to wit, the sum of sixty dollars, and to cheat and defraud the said W. S. Burk thereof." And then that "said scheme and artifice to defraud was to be effected by him, the said John H. Durland, opening a correspondence and communication with another person, to wit, the said W. S. Burk, residing within the United States, to wit, at Chester, Pennsylvania, by means of the Post Office Establishment of the United States and by inciting the said W. S. Burk to open communication with him, the said John H. Durland, so devising and intending; and he, the said John H. Durland, did heretofore, to wit, upon the day and year aforesaid, so devising and intending in and for executing such scheme and artifice to defraud and attempting so to do, place and cause to be placed a letter in the Post Office Establishment of the United States, to wit, the post office at Philadelphia, Pennsylvania, within the above district, which said letter was then and there addressed and directed as follows, to wit: 'Mr. W. S. Burk, Chester, Pa.,' profert whereof is now made, contrary to the form of the act of Congress in such case made and provided and against the peace and dignity of the United States of America."

The bond, a copy of which was in each indictment, is entitled a "Current-Tontine Investment Option Bond," purported to be issued by the Provident Bond and Investment Company, whose capital was named as one hundred thousand dollars, and was a promise on the part of the company to pay one thousand dollars upon nine conditions; the first being a monthly payment of $5, failure to make any such monthly

payment working a forfeiture; second, that the company would retain fifty cents for expenses; of the net remainder, twenty-five per cent was to be carried to a reserve and seventy-five per cent was to constitute a redemption fund. The third and fourth conditions were as follows:

"Third. (a.) This bond will mature when the net monthly instalments (exclusive of expense fund) together with its apportionment of reserve credits, equal its face value. (b.) It may be redeemed by the company at any time before its maturity, at any time after three regular monthly payments have been made herefor, the holder hereby agreeing to surrender the same whenever called, upon receipt of its then redemption value."

"Fourth. The redemption value of this bond when called will be the sum specified under the 'Table of Current Redemption Values' printed on the back hereof, according with the number of months it has been in force at time of call."

The table mentioned in this fourth specification is the redemption scale which appeared in the circular heretofore referred to. The remaining stipulations were in reference to calls, special redemptions, conversion into certificates, return in case of death of all payments made to the redemption and reserve fund, and assignments. Section 5480, as amended by the act of March 2, 1889, so far as material to this case, reads as follows:

"If any person having devised or intending to devise any scheme or artifice to defraud . . . to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the Post Office Establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet or advertisement, in any post office, branch post office, or street or hotel letter-box of the United States, to be sent or delivered by the said Post Office Establishment, or shall take or receive any such there-

from, such person so misusing the Post Office Establishment shall, upon conviction, be punishable," etc.

*Mr. James M. Beck* and *Mr. Hampton L. Carson* for plaintiff in error. *Mr. William F. Harrity* was on their brief.

*Mr. Assistant Attorney General Whitney* and *Mr. John L. Thomas*, Assistant Attorney General for the Post Office Department, for the defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

Inasmuch as the testimony has not been preserved, we must assume that it was sufficient to substantiate the charges in the indictments; that this was a scheme and artifice to defraud, and that the defendant did not intend that the bonds should mature, or that although money was received any should be returned, but that it should be appropriated to his own use. In other words, he was trying to entrap the unwary, and to secure money from them on the faith of a scheme glittering and attractive in form, yet unreal and deceptive in fact, and known to him to be such. So far as the moral element is concerned it must be taken that the defendant's guilt was established.

But the contention on his part is that the statute reaches only such cases as, at common law, would come within the definition of "false pretences," in order to make out which there must be a misrepresentation as to some existing fact and not a mere promise as to the future. It is urged that there was no misrepresentation as to the existence or solvency of the corporation, the Provident Bond and Investment Company, or as to its modes of doing business, no suggestion that it failed to issue its bonds to any and every one advancing the required dues, or that its promise of payment according to the conditions named in the bond was not a valid and binding promise. And then, as counsel say in their brief, "it [the indictment] discloses on its face absolutely nothing but an in-

tention to commit a violation of a contract. If there be one principle of criminal law that is absolutely settled by an overwhelming avalanche of authority it is that fraud either in the civil courts or in the criminal courts must be the misrepresentation of an existing or a past fact, and cannot consist of the mere intention not to carry out a contract in the future."

The question thus presented is one of vital importance, and underlies both cases. We cannot agree with counsel. The statute is broader than is claimed. Its letter shows this: "Any scheme or artifice to defraud." Some schemes may be promoted through mere representations and promises as to the future, yet are none the less schemes and artifices to defraud. Punishment because of the fraudulent purpose is no new thing. As said by Mr. Justice Brown, in *Evans* v. *United States*, 153 U. S. 584, 592, "if a person buy goods on credit in good faith, knowing that he is unable to pay for them at the time, but believing that he will be able to pay for them at the maturity of the bill, he is guilty of no offence even if he be disappointed in making such payment. But if he purchases them, knowing that he will not be able to pay for them, and with an intent to cheat the vendor, this is a plain fraud, and made punishable as such by statutes in many of the States."

But beyond the letter of the statute is the evil sought to be remedied, which is always significant in determining the meaning. It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. Eagerness to take the chances of large gains lies at the foundation of all lottery schemes, and, even when the matter of chance is eliminated, any scheme or plan which holds out the prospect of receiving more than is parted with appeals to the cupidity of all.

In the light of this the statute must be read, and so read it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. The significant fact is the intent and purpose. The question presented by this indictment to the jury was not, as counsel insist, whether the business scheme suggested in this bond was practicable or not. If the testimony had shown

that this Provident company, and the defendant, as its president, had entered in good faith upon that business, believing that out of the moneys received they could by investment or otherwise make enough to justify the promised returns, no conviction could be sustained, no matter how visionary might seem the scheme. The charge is that in putting forth this scheme it was not the intent of the defendant to make an honest effort for its success, but that he resorted to this form and pretence of a bond without a thought that he or the company would ever make good its promises. It was with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect, that this statute was passed; and it would strip it of value to confine it to such cases as disclose an actual misrepresentation as to some existing fact, and exclude those in which is only the allurement of a specious and glittering promise. This, which is the principal contention of counsel, must be overruled.

The second, which applies more fully to the first than the second case, is that the indictment is defective in that it avers that in pursuance of this fraudulent scheme twenty letters and circulars were deposited in the post office, without in any way specifying the character of those letters or circulars. It is contended that the indictment should either recite the letters, or at least by direct statements show their purpose and character, and that the names and addresses of the parties to whom the letters were sent should also be stated, so as to inform the defendant as to what parts of his correspondence the charge of crime is made, and also to enable him to defend himself against a subsequent indictment for the same transaction. These objections were raised by a motion to quash the indictment, but such a motion is ordinarily addressed to the discretion of the court, and a refusal to quash is not, generally, assignable for error. _Logan v. United States_, 144 U. S. 263, 282.

Further, the omission to state the names of the parties intended to be defrauded and the names and addresses on the letters is satisfied by the allegation, if true, that such names and addresses are to the grand jury unknown. And parol evi-

dence is always admissible, and sometimes necessary, to establish the defence of prior conviction or acquittal. *Dunbar* v. *United States*, 156 U. S. 185, 191.

It may be conceded that the indictment would be more satisfactory if it gave more full information as to the contents or import of these letters, so that upon its face it would be apparent that they were calculated or designed to aid in carrying into execution the scheme to defraud. But still we think that as it stands it must be held to be sufficient. There was a partial identification of the letters by the time and place of mailing, and the charge was that defendant "intending in and for executing such scheme and artifice to defraud and attempting so to do, placed and caused to be placed in the post office," etc. This, it will be noticed, is substantially the language of the statute. If defendant had desired further specification and identification, he could have secured it by demanding a bill of particulars. *Rosen* v. *United States*, 161 U. S. 29.

We do not wish to be understood as intimating that in order to constitute the offence it must be shown that the letters so mailed were of a nature calculated to be effective in carrying out the fraudulent scheme. It is enough if, having devised a scheme to defraud, the defendant with a view of executing it deposits in the post office letters, which he thinks may assist in carrying it into effect, although in the judgment of the jury they may be absolutely ineffective therefor.

A final objection is that the indictment in the first case is multifarious because, as claimed, it includes many offences, and *In re Henry*, 123 U. S. 372, 374, is cited as authority therefor, in which, in reference to a case of this nature, Chief Justice Waite said: "Each letter so taken out or put in constitutes a separate and distinct violation of the act." This objection was not taken until after the verdict, and hence, if of any validity, was presented too late. *Connors* v. *United States*, 158 U. S. 408, 411.

These are the only objections which require consideration, and, finding no error in them, the judgment in each of these cases is

*Affirmed.*