UNITED STATES of America, Plaintiff,

v.

**Morris Wayne WEBB, Debby Buchanan, Defendants.**

**Cr. A. No. CR–87–00005–B(M).**

United States District Court,
W.D. Kentucky,
Bowling Green Division.

July 14, 1988.

Randy Ream, Asst. U.S. Atty., for the W.D. of Kentucky, Louisville, Ky., for plaintiff.

David Broderick, Cole, Broderick, Minton, Moore & Thorton, Bowling Green, Ky., Gary S. Logsdon, Brownsville, Ky., for defendants.

## MEMORANDUM OPINION

MEREDITH, District Judge.

On October 20, 1987, this Court overruled the motion of the defendants, Morris Wayne Webb and Debby Buchanan, to dismiss the superseding indictment. This Court held that the superseding indictment properly tracked the requirements set forth in the recent and controversial Supreme Court decision in *McNally v. United States*, — U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Fortuitously on that same date, my esteemed colleague, the Honorable Judge Thomas A. Ballantine, Jr., entered an Order granting a motion to dismiss the indictment in a case involving a different defendant but very similar facts and allegations in the indictment. *United States v. Hyleme George*, Case No. CR–86–00123–L(B) [available on WESTLAW, 1987 WL 48848], Memorandum entered October 20, 1987. The resulting disparity prompted defendant Webb to move for reconsideration of this Court's Order. The Court granted a motion for oral argument on the matter and oral argument was conducted December 15, 1987. Following oral argument, the parties supplemented the pleadings with post-argument briefs. In the interim, this Court was hopeful that there might be an appellate

opinion addressing the issues herein. Such was not the case. Out of fairness to all concerned, the Court will wait no longer. It is time to rule. The Court upon review of the pleadings and caselaw now enters its Order overruling the motion to dismiss the superseding indictment.

Prior to the landmark decision in *McNally*, the mail fraud statute had been interpreted to include schemes to defraud persons of their intangible right to honest government. Courts concluded that the language "to defraud" encompassed more than mere property rights as it was a separate clause in the statute with separate application. In fact, every United States Circuit Court of Appeals uniformly upheld this interpretation. *United States v. Callanan*, 671 F.Supp. 487, 489 (E.D.Mich. 1987). Consistent with this long-standing interpretation, the defendants in *McNally* were indicted under Section 1341 for participating in a scheme to obtain insurance commissions. The jury in *McNally* was instructed that defendants could be found guilty of mail fraud if they found that the defendants engaged in a scheme and failed to disclose their interest in the sham company.

The Supreme Court, apparently dissatisfied with what it perceived as the "ambiguous outer boundaries" of § 1341 and the involvement of "the Federal Government in setting standards of disclosure and good government for local and state officials," struck down the convictions in *McNally*. *McNally*, 107 S.Ct. at 2881. Delving into the admittedly limited legislative history surrounding the enactment of various parts of § 1341, the Supreme Court discerned an intent to limit § 1341 to money and property losses exclusively.

Relying on *Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896), Congress incorporated the holding of *Durland* that § 1341 reaches "everything designed to defraud by representations as to the past or present, or suggestions and promises to the future," however, the language used in the statute was reflected in the phrase "for obtaining money or property ..." *McNally*, 107 S.Ct. at 2880. The *McNally* majority reasoned that in light of the common meaning of the words "to defraud" which had as its object money or property losses and the legislative intent to reach money or property losses, Section 1341 must necessarily be limited to only money or property losses. As such the Court found the instructions to the jury woefully inadequate and pointed out the following errors:

(1) "there was no charge and the jury was not required to find that the Commonwealth itself was defrauded of any money or property,"

(2) "It was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance."

(3) The commissions received by the defendants "were not the Commonwealth's money."

(4) "[T]he jury was not charged that to convict it must find that the Commonwealth was deprived of control over how its money was spent ... the premium of insurance would have been paid to some agency, and [defendants asserted] control that the Commonwealth might not otherwise have made ..."

(5) "[T]here was nothing in the jury charge that required ... a finding ... that [defendants] obtained property by means of false pretenses ..."

*McNally*, 107 S.Ct. at 2882.

The Court takes this opportunity to digress a moment to discuss the unanswered questions left in the wake of *McNally*. The *McNally* decision is not clear on whether § 1341 now proscribes two or three categories of offenses. As Justice Stevens points out, the statute on its face appears to reach three types of criminal behavior:

(1) schemes to defraud, or

(2) schemes to obtain money or property, or

(3) schemes to deal in counterfeit currency.

*McNally*, 107 S.Ct. at 2884 (Justice Stevens' dissent). The majority opinion to some extent embraces these three categories by acknowledging that the language of § 1341 is disjunctive leading to a conclusion of separateness. However, relying solely on the legislative history, the Supreme Court held, and this is the part that is unclear, that the language "to defraud" is either modified by the language "for obtaining money or property" or that "money or property" is an implied part of the words "to defraud." The result of the former is to lump § 1341 violations into two categories rather than as the latter suggests, to continue three viable categories of violations. Furthermore, it is unclear, if the words "money or property" apply to all portions of § 1341. If con artists were to send me information in the U.S. Mails in an attempt to separate me from my money based on a counterfeit scheme, would there still be a Mail Fraud violation if I did not succumb to their treachery? Finally, in light of the Court's holding, it is unclear whether the words "to defraud" have separate meaning from the words "false and fraudulent pretenses, representations." Pursuant to the proposition that a statute may not be construed in such a way as to render any part of it surplusage, the Court wonders what separate meaning attaches to these seemingly similar words. *United States v. Mehrmanesh*, 689 F.2d 822 (8th Cir.1982).

As noted earlier, the motion presently before the Court was precipitated by the conflicting rulings of Judge Ballantine in the *George* case granting dismissal and this Court's Order overruling dismissal in this action. In the instant case, defendants are charged with devising a scheme and artifice to defraud the citizens, voters and taxpayers of Edmonson County and of the Commonwealth of Kentucky through false representations and concealment of material facts, of control over how the Commonwealth's public monies were to be allocated with respect to the salary and expenses of the Office of the Sheriff of Edmonson County. The alleged scheme involved the procurement of false absentee ballots which were mailed to Edmonson County

for tabulation in the Sheriff's election. Jerry Prunty, the successful candidate for Sheriff, was related to defendant Webb. Carlton Skaggs was the unsuccessful opponent. A similar scheme with different characters was alleged in the *George* case before Judge Ballantine.

The critical issue before the Court is not whether the indictment properly alleges a money or property loss because it does, but whether, as a matter of law, the Commonwealth is subject to a potential loss of money or property by the alleged scheme. Once again, the scheme does not have to be successful. Judge Ballantine, relying on the statement in *McNally* that the premium for insurance would have been paid to some agency, concluded that no loss could as a matter of law be alleged when the salary at question would have been paid any way. The District Court in New York took the same approach in *Ingber v. Enzor*, 664 F.Supp. 814 (S.D.N.Y.1987).

In *Ingber*, the defendant was convicted of defrauding the citizens of Fallsburg, New York by obtaining the "salary, power and privileges" of the Office of Supervisor by means of "false and fraudulent absentee ballot applications, ballot envelopes, and ballots." *Ingber*, 664 F.Supp. at 815. The Court held that payment of a routine and budgeted expenditure did not constitute a loss of money.

The comments of Justice White in *McNally* which raises this issue must be viewed in light of the circumstances of *McNally*. The funds in question in *McNally* were not funds of the Commonwealth. The premium for insurance paid by the Commonwealth generated the private insurance commissions that were the subject of the *McNally* suit, but tax dollars did not comprise the insurance commissions. Justice White, I believe in an attempt to clarify that distinction and to point out the tenuous connection between the money and the Commonwealth, stated:

"... the premium for insurance would have been paid to some agency, and what [the defendants] did was to assert control that the Commonwealth might not otherwise have made over the commissions

paid by the insurance company to its agents."

*McNally*, 107 S.Ct. at 2882.

In other words, the fraud had no impact on the payment of the insurance and more than that, the control exercised by the defendants had no direct connection to state funds. Therefore, in *McNally*, no showing whatsoever could be made that taxpayers' money was affected by the fraud.

■ It must be noted that mail fraud does not require proof of successful acquisition of money or property nor of actual loss. *Erwin v. United States*, 242 F.2d 336 (6th Cir.1957); *United States v. Dial*, 757 F.2d 163 (7th Cir.1985); *United States v. Pollack*, 534 F.2d 964 (D.C.Cir.1976). The United States need not allege that the Commonwealth actually suffered a loss but need only allege money or property was put in jeopardy by the scheme. A net loss in the salary expended is superfluous to this action.

■ The problem with the interpretation given by Judge Ballantine and the District Court in New York is that it excludes from the mail fraud statute activity that traditionally falls within the ambit of the statute. Would a hospital be no less defrauded by paying the regularly budgeted salary of an unqualified surgeon than if the salary were not a regular budget item? Would a person who intends and budgets to purchase an appliance be no less defrauded by a falsely represented faulty item than if he did not intend to purchase? These examples demonstrate that the existence of fraud does not turn on the intent of the purchaser but instead turns on the quality of the service or item purchased. More simply put, it is not the fact that the Commonwealth had regularly budgeted the salary of the Sheriff and intended to pay that salary upon which this case turns but instead the case turns on whether the Commonwealth received for payment of the Sheriff's salary a properly elected official. The facts of *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987) demonstrate this principle. Defendant Wellman was charged with misrepresenting the fact that the tanks he sold did not meet Department of Transportation standards though he represented that they did. Though the indictment did not specifically allege a money or property loss, the substance of the case was a loss to the victim either due to the money spent on the tanks or their poor quality. The Circuit Court upheld the conviction for mail fraud under the *McNally* decision. I do not believe the result would have been different if the victim were the Commonwealth and the tanks were purchased with budgeted money.

The essence of fraud is that through false representations, the victim has something, whether it be a product, service or an employee, that is of lesser value than the price paid. In civil fraud, the concept is known as the "benefit of the bargain." *Bechtel v. Liberty National Bank*, 534 F.2d 1335 (9th Cir.1976). Justice White in *McNally* touches on this critical issue when he states:

"It was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance."

*McNally*, 107 S.Ct. at 2882. The Commonwealth in *McNally*, despite the fraud, would have received the benefit of its bargain. The same cannot be said of the instant case.

■ As noted above, proof of mail fraud need only demonstrate that the design of the scheme was to obtain money or property. In the instant action, the salary and emoluments of the Office of Sheriff amounted to at least $33,000 per year, no small amount of money in a county which has one of the highest unemployment rates in Kentucky. In addition, it is highly likely that the defendants herein were expecting to profit from the election of Prunty. Ms. Buchanan was allegedly interested in being one of Prunty's deputies and it can be assumed that, given the dynamics of politics, it would not be detrimental to Webb to have a close friend and relative as Sheriff of the county, a very powerful position especially in a rural county. The point on which this case turns is whether the solicitation and transmittal of fraudulent absentee ballots designed to secure a successful

election and resulting salary of a particular candidate constitute a detriment to the Commonwealth. Unlike *McNally*, the salary and expenses of the sheriff are "the Commonwealth's money." *McNally*, 107 S.Ct. at 2882. If the scheme were successful, do the citizens of the Commonwealth receive the benefit of their bargain or to put it another way, are all elected officials, regardless of the integrity of their election, of the same quality such that the Commonwealth is not injured by the payment of any of them? The mere fact that the Commonwealth attempts to regulate its elections indicates the contrary. Chapter 119 of the Kentucky Revised Statutes. It can be argued that tax dollars spent on improperly elected officials or officials elected in tainted elections are as much a loss as private money lost on poor service. The fact that Prunty would have won anyway without the absentee ballots is of no consequence in that we have already seen that the scheme or artifice to defraud is itself illegal. The scheme does not have to succeed to be illegal.

Furthermore, Justice White acknowledges the right of the Commonwealth to control its tax dollars when he noted that a fatal flaw in *McNally* was that the indictment failed to allege that the "Commonwealth was deprived of control over how its money was spent." *McNally*, 107 S.Ct. at 2882. Presumably, Justice White is again pointing out that the *McNally* scheme involved funds other than those of the Commonwealth and that had funds of the Commonwealth been involved, as in the case at bar, the indictment would have been proper.

The Sixth Circuit Court of Appeals has not squarely addressed the issue at hand. However, the Circuit Court has held that where an indictment clearly alleges a money or property loss for a violation of § 1341 and the jury is so instructed, an offense within the mail fraud statute has been properly alleged. *United States v. Horton*, 847 F.2d 313 (6th Cir.1988). The indictment in the case at bar alleges a money loss. Therefore, the indictment properly alleges an offense within § 1341. It is now the responsibility of the United States to

prove that these defendants intended to acquire this tangible property of the Commonwealth of Kentucky. If the United States cannot do so, its prosecution will fail.

For the reasons and authorities cited, the motion of the defendants, Morris Wayne Webb and Debby Buchanan, to dismiss the superseding indictment is overruled and an Order reflecting the Court's ruling is dated this same date and filed simultaneously herewith.