UNITED STATES of America,
Plaintiff,

v.

MEDICAL SERVICES CORPS, INC.,
ELK Transportation, Inc., NCC Trans-
portation, Inc., Independence EMS,
Inc., and Robert U. Syme, Defendants.

No. Cr.A. 98–32–JJF.

United States District Court,
D. Delaware.

March 18, 1999.

**500**

Carl Schnee, United States Attorney, Luis M. Matos, Assistant United States Attorney, and Beth Moskow–Schnoll of U.S. Department of Justice, Wilmington, Delaware, for the United States of America.

Joseph A. Hurley, Wilmington, Delaware, for Defendants.

## *OPINION*

FARNAN, Chief Judge.

The Defendants were convicted by a jury on various counts of wire fraud, 18 U.S.C. § 1343, mail fraud, 18 U.S.C. § 1341, and violation of the False Claims Act, 18 U.S.C. § 287, in connection with their submission of claims for payment to Pennsylvania Blue Shield, Medicare and Medicaid. Presently pending before the Court are the Defendants' Motion For Judgment Of Acquittal (D.I.52) and Motion For A New Trial (D.I.53). In support of their Motions, the Defendants make the following arguments: (1) a directed verdict of acquittal should be granted as to all counts, except Count 31, where a finding of guilty was rendered by the jury, because the Indictment in this case was premised upon policy statements that do not have the effect of federal law; and (2) a new trial should be granted as to Counts 1 through 19, 21 through 25, 27 and 29 because the jury was not specifically instructed that it had to reach a unanimous verdict on the factual bases for its verdicts of guilty. In response, the Government contends that the Defendants were indict-ed and convicted pursuant to clearly established federal law, as set forth in the mail fraud statute, the wire fraud statute, and the False Claims Act, and that the Court's failure to give the jury a specific unanimity instruction did not constitute plain error (D.I.57).

## I. *Motion For Judgment Of Acquittal (D.I.52)*

Rule 29 of the Federal Rules of Criminal Procedure provides that:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Fed.R.Crim.P. 29(a). The Defendants contend that the Court should grant a judgment of acquittal because the Government did not establish that the Defendants violated federal law. Although the jury convicted the Defendants on counts of mail and wire fraud and violations of the False Claims Act, the Defendants maintain that the Government's case was based on allegations that the Defendants violated policy definitions promulgated by nongovernmental corporate entities which do not constitute federal law. The Defendants further contend that conviction under the aforementioned statutes must be premised upon violation of federal law.

In order to establish a violation of the mail or wire fraud acts, the Government must prove: (1) the existence of a scheme to defraud; (2) the participation by the Defendants in the particular scheme charged with the specific intent to defraud; and (3) the use of the United States mail or wire communications in furtherance of the fraudulent scheme. *See* 18 U.S.C. §§ 1341, 1343; *United States v. Hannigan*, 27 F.3d 890, 892 (3d Cir.1994). To establish a violation of the False Claims Act, the Government must prove that: (1)

the Defendants presented a false or fraudulent claim against the United States; (2) the claim was presented to an agency or contractor of the United States; and (3) the Defendants knew the claim was false or fraudulent. *See* 18 U.S.C. § 287; *United States v. Okoronkwo*, 46 F.3d 426, 430 (5th Cir.1995).

In an effort to establish liability under the mail and wire fraud statutes and the False Claims Act, the Government introduced evidence that the Defendants participated in a scheme to defraud by virtue of their submission of fraudulent claims to Xact, or its predecessor, Pennsylvania Blue Shield, Medicare and Medicaid for the purpose of securing reimbursement for ambulance transportation. The Government introduced evidence that such claims were false or fraudulent because: (1) they were billed at a Pennsylvania rate which the Defendants were not entitled to use; (2) the claims stated that the transportation was medically necessary, when it was not; and/or (3) the transportation was for a non-covered destination or for a non-covered service. Such billing practices were established to be in violation of the policy definitions and guidelines set forth by Xact and Blue Shield. The Defendants now contend that violation of the policies of such non-governmental entities cannot constitute a basis for prosecution under the mail and wire fraud statutes or the False Claims Act. In response, the Government argues that the mail and wire fraud statutes and the False Claims Act do not require that the specific factual underpinnings of the scheme to defraud or the false claim be prohibited by federal law.

▮ Courts, interpreting the mail and wire fraud statutes, have stated that the "scheme to defraud" itself need not violate federal law; the violation of federal law occurs when the United States mail or wire communications are used to effectuate the scheme. *See United States v. Man-*

*del*, 591 F.2d 1347, 1361 (4th Cir.), *aff'd per curiam in relevant part* 602 F.2d 653 (1979) (en banc); *United States v. Kelly*, 507 F.Supp. 495, 498 & n. 7 (E.D.Pa.1981). Because of the statutes' broad, amorphous language, coupled with a lack of explanatory legislative history, courts have generally enjoyed considerable latitude in determining what types of schemes come within the purview of the statutes. *Kelly*, 507 F.Supp. at 498. Indeed, the United States Supreme Court has held that the perimeters of the term "scheme or artifice to defraud" are not limited to common law concepts of fraud or false pretenses and that the existence of such a scheme is not contingent upon a violation of state law. *Durland v. United States*, 161 U.S. 306, 313–14, 16 S.Ct. 508, 40 L.Ed. 709 (1896). The United States Court of Appeals for the Fourth Circuit has stated:

> As a result of the failure to limit the term "scheme or artifice" to defraud to common law definitions of fraud and false pretenses and schemes prohibited by State law, the mail fraud statute generally has been available to prosecute a scheme involving deception that employs the mails in its execution that is contrary to public policy and conflicts with accepted standards of moral uprightness, fundamental honesty, fair play and rights dealing.[1]

*Mandel*, 591 F.2d at 1361. Similarly, courts have permitted the prosecution of schemes to defraud under the mail and wire fraud statutes which are not otherwise proscribed by federal law. *Kelly*, 507 F.Supp. at 498 n. 7.

▮ Likewise, courts have not required that a false or fraudulent claim violate federal law in order to be prosecutable under the False Claims Act. For example, in *United States v. Siddiqi*, 959 F.2d 1167 (2d Cir.1992), the United States Court of Appeals for the Second Circuit held that the evidence presented was sufficient to

---

1. Cases interpreting the mail fraud statute are applicable to the wire fraud statute as well. *United States v. Tarnopol*, 561 F.2d 466, 475 (3d Cir.1977), *overruled on other grounds by Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

sustain a jury conviction for mail fraud and violation of the False Claims Act arising out of the defendant's submission of claims for Medicare reimbursement, where the claims were established to be in violation of guidelines set forth in the Blue Shield's Doctor's Manual. *Id.* at 1169 & 1172. The defendant, a Medicare-approved participating physician, submitted claims for Medicare coverage, either by mail or computer, to Blue Shield. The defendant had been provided with the Blue Shield's Doctor's Manual, which contains various descriptions of medical services and five-digit numerical codes for use in claims for reimbursement. *Id.* at 1169. Each provider is required to select from the Manual the code which most accurately describes the services rendered. *Id.* The government established that the claims submitted by the defendant were false because they were claims for services the defendant did not perform, in contravention of the guidelines set forth in the Doctor's Manual. *Id.* at 1170. The Second Circuit held that there was sufficient evidence to sustain the jury's conviction of the defendant for violation of the mail fraud statute and False Claims Act. *Id.* at 1172–73.

■ Similarly, in this case, the convictions were properly premised upon violations of federal law arising out of the submission of false claims to the federal government and the use of the United States mail and wire communications to effectuate a scheme to defraud, even though the underpinnings of the scheme to defraud and false claims were not themselves violative of federal law. *See also United States v. Krizek,* 859 F.Supp. 5 (D.D.C.1994), *modified by* 909 F.Supp. 32 (1995), *aff'd in relevant part by* 111 F.3d 934 (D.C.Cir.1997) (holding the defendants liable under the False Claims Act and common law for submitting false billings for Medicare and Medicaid patients in violation of procedures set forth in the American Medical Association's "Current Procedural Terminology" manual, which lists the terms and codes for reporting procedures performed by physicians). In view of the foregoing case law, the Court concludes that it is not a requirement under the mail and wire fraud statutes and the False Claims Act that the scheme to defraud or false claim violate federal law. Rather, federal law is violated when the United States mail or wire communications are used to effectuate the scheme to defraud or when the false claim is asserted against the United States. Therefore, the Court concludes that the evidence presented at trial is sufficient to sustain the jury's conviction of the Defendants on counts of mail and wire fraud and violation of the False Claims Act. Accordingly, the Court will deny the Defendant's Motion For Judgment Of Acquittal (D.I.52).

## II. *Motion For A New Trial (D.I.53)*

The Defendants move for a new trial on Counts 1 through 19, Counts 21 through 25, and Counts 27 and 29. For each of these Counts, the Government alleged that the Defendants' submission of claims for reimbursement violated federal law because they were based on the utilization of an improper provider number, the services provided were not medically necessary, or the services were not covered because of certain destination or treatment requirements. During deliberations, the jury submitted a note to the Court inquiring whether they had to find all four of the above-stated theories proven in order to return a guilty verdict on any one Count. The Court instructed the jury that in order to reach a verdict, they had to find that each element had been proven beyond a reasonable doubt; however, only one entry on the statements need be proven false as long as all of the other elements were proven beyond a reasonable doubt (D.I. 57 at Exh. B, Tr. F–4). The Defendants now contend that the Court's failure to give a specific unanimity instruction constitutes "plain error," and, as a result, the Court must grant a new trial. Specifically, the Defendants claim that, in the absence of a specific unanimity instruction, the jury may have "mix[ed] and

match[ed]" each of the four categories to arrive at a guilty verdict as to any one Count, without arriving at a unanimous agreement on at least one factual basis for liability per Count.

In its opposition to the Defendants' Motion, the Government emphasizes that the Defendants did not request or object to the lack of a specific unanimity instruction. The parties jointly proposed that a general unanimity instruction be included in the jury instructions, and the Defendants made no objection to the proposed unanimity instruction at the pre-trial conference or the prayer conference. Thus, the Court instructed the jury that their "verdict, whether it is guilty or not guilty, must be unanimous. To find a defendant guilty, every one of you must agree that the government has overcome the presumption of innocence with evidence that proves his or its guilt beyond a reasonable doubt" (D.I.57 at Exh. A). When the Court consulted with counsel prior to addressing the jury's question noted above, Defendants, again, did not request a specific unanimity instruction. In fact, after the Court addressed the jury's question, the Defendants' counsel told the Court that "[t]he instruction was carefully balanced. And there is actually no objection" (D.I.57 at Exh. B, Tr. F–5).

■ Because Defendants did not request an additional instruction regarding unanimity or object to the lack of a specific unanimity instruction, in order to prevail on their Motion For A New Trial (D.I.53), the Defendants must show that the Court's failure to give such an instruction constitutes plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Santos,* 932 F.2d 244, 247 (3d Cir.1991). Under the plain error standard set forth in Federal Rule of Criminal Procedure 52(b), courts are authorized to correct a verdict only where there are " 'particularly egregious errors' " that " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)

(quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). Typically, a general unanimity instruction "will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *United States v. Beros,* 833 F.2d 455, 460 (3d Cir.1987). However, when the complexity of the case, or other factors, creates the potential that the jury will be confused, a court is required to give the jury a specific unanimity instruction. *Id.* at 460–61.

In *United States v. Mangieri,* 694 F.2d 1270 (D.C.Cir.1982), the United States Court of Appeals for the District of Columbia Circuit rejected the defendant's motion for a new trial on the basis that the court's failure to give a specific unanimity instruction was plain error. *Id.* at 1281. The defendant complained that the jurors were not instructed that, in order to find the defendant guilty on each of nine counts of making false statements, they had to agree that the defendant made at least one specific, material false statement per count. *Id.* at 1279. Since the Government sought to prove fourteen false statements for each count, the jurors might have unanimously agreed that a false statement had been made without agreeing on which statement it was. *Id.* Because the defendant had failed to object to the lack of a specific unanimity instruction, the court applied the plain error standard, stating, "We have been especially reluctant to reverse for plain error when it is 'invited.' " *Id.* at 1280. In *Mangieri,* as in this case, counsel for the defendant not only failed to offer a specific unanimity instruction, but registered his approval of the proposed instructions. *Id.* at 1279. The court, viewing the instruction in the context of the whole trial, concluded that it had not committed plain error. *Id.* at 1280. The court specifically rejected the defendant's argument that "when the government seeks to con-

vict for one offense by proving two or more acts, proof of either one being sufficient, the court must, even in the absence of a request, instruct jurors that they must be unanimous in their finding that the government has proven the same one (or more) acts." *Id.*

 As in *Mangieri,* the Court concludes that a specific unanimity instruction was not required or warranted in this case, and, therefore, the Defendants' Motion For A New Trial (D.I.53) will be denied. In reaching this conclusion, the Court has considered the facts offered and proved by the Government in support of its theory of the crimes charged, the complexity of the facts and law presented to the jury by both the Government and the Defendants, and whether the presentation of the case, both factually and legally, was unduly prejudicial to the Defendants or in some way lacked basic fairness. After weighing these three considerations, the Court is not persuaded that plain error resulted when the jury was not given a specific unanimity instruction. The overall theory of prosecution on Counts 1 through 29 was that the Defendants submitted false claims for payments to Medicare or Medicaid in violation of federal law. Although the Government presented the jury with four possible factual bases upon which liability may have been premised, the Court does not consider the case, as presented, to have been so complex as to necessitate a specific unanimity instruction. In the context of the entire charge to the jury and the presentation of evidence at trial, the Court concludes that a conscientious juror would have understood that he or she must agree with the other jurors on at least one factual basis for a finding of guilty on each of the counts. Therefore, the Court will deny the Defendants' Motion For A New trial (D.I.53).

### III. *Conclusion*

In sum, the Court concludes that the evidence presented at trial is sufficient to sustain a conviction of the Defendants on various counts of wire and mail fraud and violations of the False Claims Act, and, therefore, the Defendants' Motion For Judgment of Acquittal (D.I.52) will be denied. Additionally, because the Court concludes that a specific unanimity instruction was not required in this case, the Court will deny the Defendants' Motion For A New Trial (D.I.53).