**In re Anthony W. LOKOTNICKI, Jr., Debtor.**

**F.C.C. National Bank, Plaintiff,**

v.

**Anthony W. Lokotnicki, Jr., Defendant.**

**Bankruptcy No. 97–13939 B.**
**Adversary No. 97–1300 B.**

United States Bankruptcy Court, W.D. New York.

March 19, 1999.

Robert S. Cooper, Rochester, NY, for plaintiff.

Scott F. Humble, P.C., Joseph A. Price, of counsel, Jamestown, NY, for defendant.

CARL L. BUCKI, Bankruptcy Judge.

In this adversary proceeding to determine the dischargeability of a credit card obligation, the parties have filed cross motions to resolve issues related to the permissible scope of discovery. As in many actions of this type, the underlying dispute involves a principal obligation of less than $5,000. Presently at issue is the extent to which discovery may become unduly burdensome in the context of controversy that involves a relatively small amount of money.

Anthony and Renee Lokotnicki filed a joint petition for relief under Chapter 7 of the bankruptcy code. Among their scheduled creditors was First Card, an entity whose correct corporate name is F.C.C. National Bank. In due course, the clerk of this court entered an order of discharge. Meanwhile, F.C.C. National Bank commenced the present adversary proceeding in which it seeks a judgment determining that its claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). This section provides that an order of discharge in Chapter 7 does not discharge an individual debtor from any debt for money, property or services that is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In its complaint, F.C.C. National Bank alleges that it had previously issued a Visa account to Anthony Lokotnicki; that that account had a zero balance as of March 6,

1997; that between March 6 and March 15 of 1997, Mr. Lokotnicki received a cash advance of $2,500 and completed a credit purchase of $2,400, for a total borrowing of $4,900; and that the debtor made only one payment on account of his borrowing prior to the filing of a bankruptcy petition on June 23, 1997. Further, in paragraph 11 of the complaint, the plaintiff alleges that "the Debtor intended to deceive the Plaintiff in that he either had no intention to repay said debt to the Plaintiff or the Debtor knew or should have known that he had no ability to repay said debt to the Plaintiff." Through his counsel, Anthony Lokotnicki served an answer in which he denied paragraph 11 and asserted a counter claim for costs and reasonable legal fees.

Shortly after his receipt of the Answer, counsel for the plaintiff served upon the defendant's attorney a Request for Admissions and a First Set of Interrogatories. Asserting that this discovery was overly oppressive and burdensome, the defendant moved for a protective order and to "deny, quash, limit or restrict" the discovery requests. Plaintiff then cross moved to compel disclosure.

Bankruptcy Rule 7026 provides that Rule 26 of the Federal Rules of Civil Procedure shall apply to all adversary proceedings before this court. Establishing general provisions governing discovery, Rule 26 includes two sections that authorize this court to limit the scope of inquiry. Presumably, the defendant brings its present motion under subdivision (c) of Rule 26, which states as follows:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

Initially, plaintiff asserts that the defendant's moving papers lack the required certification of a good faith attempt to resolve the current discovery dispute. Mr. Lokotnicki's counsel asks that the court waive this requirement, due to the improbability of any accommodation that would satisfy his objection to the entirety of the discovery demands. In the present instance, the defendant's objection relates not so much to the scope of discovery as it does to the occurrence of discovery. With such a divergence of position, this Court sees no reason to compel the debtor to undertake the charade of meaningless negotiations. Even though the defendant may not have fulfilled the certification requirement of subdivision (c), the court may nonetheless on its own initiative consider the same issues pursuant to subdivision (b)(2) of Rule 26. This subdivision provides that the court may limit the extent of use of discovery, if the court determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Because the parties have had full opportunity to argue the propriety of the existing demands, it is appropriate to resolve the discovery issues at this time.

The goal of discovery is to allow the orderly exchange of information that is relevant to issues in litigation. For this reason, proper inquiry is limited to matters in dispute. Accordingly, our analysis begins with the identification of those disputed matters. In the context of the instant case, the court must first define the elements of proof required under 11 U.S.C. § 523(a)(2)(A). Specifically, the scope of permissible discovery must relate to that information needed to establish

false pretenses, a false representation, or actual fraud.

■ In interpreting the requirements of section 523(a)(2)(A), bankruptcy courts have adopted at least two divergent approaches. Some courts have held that fraud is to be defined by the totality of circumstances, without strict adherence to any particular list of requirements. *See, for example, In re Shanahan*, 151 B.R. 44 (Bkrtcy.W.D.N.Y.1993). Other courts have applied a traditional five part test, which requires that the creditor prove that "(1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intention of deceiving the creditor; (4) the creditor relied upon the representation; and (5) the creditor thereby suffered the damage or loss complained of." David F. Snow, *The Dischargeability of Credit Card Debt: New Developments and the Need for a New Direction*, 72 Am.Bankr.L.J. 63, 67–68 (1998). These differences of viewpoint held the potential for fascinating debate. In the view of this court, however, the matter is now resolved in favor of the five part test, by reason of the Supreme Court's decision in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

As in the present instance, the plaintiff in *Field v. Mans* had commenced an action in bankruptcy court to determine the dischargeability of a debt that allegedly resulted from false pretenses, a false representation, or actual fraud. The allegedly fraudulent event involved not the use of a credit card, but representations regarding the application of a due on sale clause in a mortgage. The creditor asserted that in correspondence, the debtor had misrepresented the occurrence of a sale, and that in reliance upon that misrepresentation, the creditor had failed to enforce its mortgage rights. In its holding, the Supreme Court addressed only "the level of a creditor's reliance on a fraudulent misrepresentation necessary to place a debt thus beyond release." *Field v. Mans*, 516 U.S. at 61,

116 S.Ct. 437. It concluded that the applicable standard was one demanding justifiable, rather than reasonable reliance upon the debtor's representation.

The decision in *Field v. Mans* did not expressly enumerate any test of five parts. At various points in the opinion, however, the Court did identify elements of proof required to establish actual fraud. Encompassed within these elements of proof were all components of the traditional five part test.

The present dispute arises under subdivision (A) of 11 U.S.C. § 523(a)(2). Subdivision (B) of this same section provides similarly that a discharge does not discharge an individual from any debt for money, property or services obtained by "use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) *on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied;* and (iv) that the debtor caused to be made or published with intent to deceive." (Emphasis added). In *Field v. Mans*, the petitioner argued that the requirement of reasonable reliance in subdivision (B) worked impliedly to reject the application of this same standard to debts that were otherwise subject to subdivision (A). Rejecting this argument, Justice Souter reasoned that "[i]f the negative pregnant is the reason that § 523(a)(2)(A) has no reasonableness requirement, then the same reasoning will strip (A) of any requirement to establish a causal connection between the misrepresentation and the transfer of value or extension of credit, and it will eliminate scienter from the very notion of fraud." 516 U.S. at 67–68, 116 S.Ct. 437. Thus impliedly recognized were the fifth and second of the five traditional elements of fraud, namely that the creditor suffer damage or loss by reason of the debtor's conduct, and that the debtor have knowledge that his representation is false. Further explaining its rejection of an interpretation based upon use of a negative pregnant, the

Court concluded that "nothing so odd has ever been apparent to the courts that have previously construed this statute, routinely requiring intent, reliance, and materiality before applying § 523(a)(2)(A)." 516 U.S. at 68, 116 S.Ct. 437. Accordingly acknowledged were the third and fourth elements of the five part test, that the debtor intend to deceive the creditor and that the creditor rely upon the debtor's representation.

Unlike subdivision (B) of section 523(a)(2), subdivision (A) provides no self-contained definition of a type of nondischargeable obligation.

> The operative terms in § 523(a)(2)(A), on the other hand, "false pretenses, a false representation, or actual fraud," carry the acquired meaning of terms of art. They are common-law terms, and ... they imply elements that the common law has defined them to include. *See Durland v. United States,* 161 U.S. 306, 312, 16 S.Ct. 508, 510, 40 L.Ed. 709 (1896).

516 U.S. at 69, 116 S.Ct. 437. In so citing *Durland v. United States,* the Court in *Field v. Mans* impliedly accepted that decision's definition of fraud. In *Durland,* the Supreme Court unequivocally declared that "fraud either in the civil courts or in the criminal courts must be the misrepresentation of an existing or a past fact, and cannot consist of the mere intention not to carry out a contract in the future." 161 U.S. at 313, 16 S.Ct. 508. Thus reaffirmed in *Field v. Mans* was the first of the traditional five elements of fraud, that the debtor have made a representation.

Although *Field v. Mans* did not involve the use of a credit card, it nonetheless confirmed the essential principle that the nondischargeable events of section 523(a)(2)(A) are to be defined by common law notions of false pretenses, false representations and actual fraud. At least two other bankruptcy courts have cited *Field v. Mans* as mandating the traditional five part test for actual fraud. *In re Baumblit,* 229 B.R. 50 (Bankr.E.D.N.Y.1999), *In re Alicea (Weiss v. Alicea),* 230 B.R. 492,

(Bankr.S.D.N.Y.1999). In considering actual fraud, therefore, this court will apply a standard that mandates the occurrence of some material misrepresentation. Claims based on false pretenses or false representations are similar, in that they also require some material misrepresentation, as well as justifiable reliance and the causation of financial loss. For purposes of the present discussion, the court need not define the different levels of knowledge or intent that might be necessary to establish false pretenses and false representations, as compared to actual fraud. Rather, it suffices to examine the reasonableness and propriety of the outstanding discovery demands in the context of the commonality of the other three elements of proof.

In its complaint, F.C.C. National Bank asserts that when the debtor used his credit card, he "represented that he had the ability and/or the intention to repay" the resulting obligation. Virtually all of the outstanding discovery demands relate to whether the debtor knew the falsity of this alleged representation and whether he intended thereby to deceive the creditor. Thus, in paragraph 5 of the cross motion to compel disclosure, the plaintiff acknowledges that the discovery seeks to establish the Debtor's income history, his knowledge of any collection activity against him, his knowledge of his inability to pay debts, the timing of his decision to file bankruptcy, any changes in spending habits, any fluctuation in income, the debtor's education and financial sophistication, and "any other facts which would tend to either support or contradict the Debtor's statement regarding his alleged 'intent' to repay, or the 'reasonableness' of any alleged intent to repay."

For the plaintiff, the most challenging burdens of proof relate not to the debtor's knowledge or intent, but to the other elements of its cause of action. Fundamental to any claim under section 523(a)(2)(A) is the occurrence of some misrepresentation. As with any such dispute involving use of a

credit card, the plaintiff must initially show that the debtor made some material misrepresentation either during or subsequent to the application process. The plaintiff's burden of proof might be particularly onerous if this case involved use of a credit card that the debtor did not solicit or if issued without the debtor's completion of a full credit application. Within this district, the bankruptcy court has rejected the notion that mere use of a credit card entails an implied representation of ability to pay. *In re Sigrist,* 163 B.R. 940 (Bankr. W.D.N.Y.1994). In addition to the requirement that it show the occurrence of some misrepresentation, the plaintiff must also demonstrate its justifiable reliance upon that misrepresentation and that that misrepresentation was cause for financial loss. Thus it must show that the debtor would not have received credit if some particular representation had been otherwise.

The complaint of F.C.C. National Bank fails to identify any particular writing, conversation or act which might constitute a material representation on the part of the debtor. This court does not today decide any issue regarding the definition of a material misrepresentation, or the proof needed to show justifiable reliance or causation of financial loss. Nonetheless, the court is concerned for the absence of any indication of specific operative facts establishing these elements of the cause of action. Within this district, numerous issuers of credit cards have commenced adversary proceedings similar to the present action. To date, most of these proceedings have settled, and this judge has tried only one such case to conclusion. In each instance, plaintiff's counsel has asked the defendant to respond to discovery similar to that now at issue. When coupled with the small monetary demand in a typical credit card dischargeability complaint, the cost of discovery serves as a significant inducement for settlement, irrespective of the merits of the case. The net effect in this district is to create an environment in which the issuers of credit cards might use litigation to induce the essential equivalent of reaffirmation for claims involving issues on which this court has never had the opportunity to rule.

Plaintiff asserts that its outstanding discovery demands are modest. If the defendant were a party with even moderate financial resources, then perhaps the court would be more inclined to mandate discovery responses. Like all defendants in this type of adversary proceeding, however, Anthony Lokotnicki has just received a discharge under Chapter 7 of the bankruptcy code. Presumably, his trustee has taken possession of any non-exempt assets. Moreover, the fundamental purpose of Chapter 7 is to provide an opportunity for a fresh start. Bankruptcy courts must remain vigilant to avoid practices which might compromise this basic entitlement. The plaintiff's discovery demands seek responses to eight requests for admissions and fifteen interrogatories. Unless they relate to issues of an otherwise provable cause of action, such discovery is in the present context premature, and therefore burdensome.

Courts are constituted for the purpose of resolving difficult issues. Discovery serves merely as a tool to assist in this process. In the present instance, however, the outstanding discovery directs attention to issues other than those which to the court are most troublesome. While the plaintiff's demands might well be appropriate at another stage of the proceedings, they work here to obfuscate the essential merits of the existing controversy. The solution to this problem is to be found in Bankruptcy Rule 7042, which adopts Rule 42 of the Federal Rules of Civil Procedure.

Subdivision (b) of Rule 42 provides that the court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of

any number of claims, cross-claims, counterclaims, third-party claims, or issues...." Pursuant to this authority, the court hereby directs two separate trials. The first and earlier trial will consider three issues, namely whether the debtor has made a material misrepresentation to the plaintiff, whether the creditor justifiably relied upon that misrepresentation, and whether the creditor suffered damage or loss as a consequence of that misrepresentation. The second trial will address all remaining issues, including the debtor's knowledge of the misrepresentation and his intent to deceive the plaintiff. Such bifurcation will allow the court to focus initially upon the more troublesome issues that arise in these types of actions under 11 U.S.C. § 523(a)(2)(A). Only if the creditor is successful on that first trial will the court allow the defendant to be burdened with discovery that relates to the issues of the second trial.

Having read the plaintiff's discovery demands, the court finds that all but the third and seventh requests for admission relate primarily to issues concerning the defendant's knowledge and intent. The third request asks the defendant to confirm the accuracy of account statements showing the balance due, while the seventh request seeks to confirm that the defendant had control of the account in question. Such inquiries do relate to the issue of damage and loss, and should therefore be answered now in anticipation of the first trial. The balance of the discovery demands involve the subject of the second trial, and should accordingly await that event.

Based upon the foregoing, the defendant's motion for a protective order is granted with respect to all discovery demands other than the third and seventh requests for admissions. The plaintiff's cross motion to compel disclosure is granted with respect only to the third and seventh requests for admissions, but is otherwise denied without prejudice to be-

ing renewed after completion of the first trial as directed herein.

So ordered.